GUSTAV MATHISON

*v.*

THEA SEVRINA MAGNUSON *et al.*

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. ASSIGNMENTS—*what does not amount to an equitable assignment.* An agreement between the complainant and the defendants in a partition suit to the effect that if the latter would not seek to enforce payment of a certain note of the decedent out of the personal estate, but would allow the estate to be distributed according to the respective interests of the parties as found by the decree, the complainant would see that none of the defendants were required to pay any portion of such note but would receive the same amount as though the note had been paid out of the personal estate, does not constitute an equitable assignment of a portion of the complainant's distributive share to the defendants.

2. EXECUTORS AND ADMINISTRATORS—*when item should not be credited as a payment on a mortgage note.* A check given by an executor to the master in chancery, to be applied to the credit of the heir to the personal estate upon her bid at the partition sale of the real estate, should be reported by the executor as a payment to such heir on account of her distributive share of the personal estate and not as a payment by her upon a mortgage note of the decedent, even though such note was paid out of the proceeds of the partition sale.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

ROSENTHAL & HAMILL, for appellant.

ANDERSON & ANDERSON, and GEORGE W. HESS, for appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On November 14, 1900, Ellen Marie Magnuson filed a bill in the circuit court of Cook county for the partition of certain real estate, and such proceedings were thereafter had

as resulted in a decree, on April 26, 1901, finding the tenants in common of said real estate to be seized of undivided interests therein in the following proportions: Ellen Marie Magnuson eighty one-hundred-and-twentieths; Karl Gustav Magnuson twenty-five one-hundred-and-twentieths; Thea Sevrina Magnuson and Helga Magnuson each five one-hundred-and-twentieths; Helga Jenny Olsen, Thor A. Olsen, Ellen S. Olsen, Magnus Olsen and Mabel A. Olsen each one one-hundred-and-twentieth; also finding that during the lifetime of Peter Oluf Magnuson, now deceased, through whose last will and testament the above named parties derived title, said Peter Oluf Magnuson, to secure his note for $4500, conveyed, by trust deed, to Thomas S. Creighton a portion of the real estate sought to be partitioned; that said note is now held by David S. Cook, and, with interest thereon, is still due and unpaid, and that said trust deed is a first lien upon such portion of said real estate; also finding that Karl Gustav Magnuson had theretofore conveyed to August Dahlgren, by mortgage deed, his interest in said real estate to secure his note for $4050, and that said mortgage is a lien upon the interest of said Karl Gustav Magnuson but is subordinate to the lien of the Creighton or Cook trust deed. Partition of the premises was awarded in accordance with the rights and interests of the parties as above set out and commissioners were appointed to make partition. Dahlgren and Cook were parties to the suit. The commissioners reported that the premises were not susceptible of division without manifest prejudice to the parties in interest. Thereupon George Mills Rogers, the master in chancery, was ordered to sell the premises free of encumbrances, and to distribute the money realized from the sale to the parties entitled thereto "according to the decree heretofore entered herein." The premises were thereafter sold to Ellen Marie Magnuson, the complainant in the bill, for the sum of $17,700. This sale was approved and the master was ordered to execute a deed to the purchaser. He was also directed to pay

226—24

the costs of suit out of the proceeds of sale, and to "distribute the residue of said money between said parties in the proportions to which each of them are, respectively, entitled according to the decree of partition entered in said cause on the 26th day of April, 1901." While this decree is very awkwardly drawn, its purpose was, in part, to direct the payment in full of the Cook encumbrance and the application of the distributive share of Karl Gustav Magnuson upon the Dahlgren encumbrance, and the decree was evidently so understood by all the parties to the partition suit. On May 22, 1902, the cause was stricken from the docket of the circuit court.

After the sale in partition Karl Gustav Magnuson sued out a writ of error from this court seeking to obtain a reversal of the decree of partition on the ground that he was entitled to an undivided one-half of the real estate instead of twenty-five one-hundred-and-twentieths, as found by the decree, and that complainant was the owner of the remaining one-half. The decision of this court was adverse to Karl Gustav Magnuson. (*Magnuson v. Magnuson,* 197 Ill. 496.) Before this writ of error was sued out, and on October 16, 1901, in order to obviate the necessity of a *supersedeas* and to permit the sale already made to stand, an agreement in writing was entered into between all the parties found by the decree of partition to be tenants in common of the property, under the terms of which the master was to pay out of the proceeds of sale, first, the costs of the partition proceeding, the taxes on the property and the Cook note and mortgage, the latter then amounting to $4782; second, to Ellen Marie Magnuson, on account of her distributive share in the proceeds of sale, one-half of the balance then remaining; and third, on account of the Dahlgren note and mortgage the sum of $2379.76. It was further agreed that the master should hold the balance then remaining to await the outcome of the writ of error, provided that the writ should be sued out to the December term, 1901, of this

court, otherwise it was agreed that the master should distribute such balance "in accordance with the order of distribution entered in said partition proceedings first hereinabove mentioned." This agreement was entered into between the parties through their respective solicitors. The writ was sued out to said term of this court and the written contract was carried out in the manner hereinafter stated.

When this agreement was made Ellen Marie Magnuson had paid only $2500 to the master on account of her bid. Two days after the agreement, and on October 18, 1901, she gave to the master a receipt for $5711.44 on account of her distributive share in the proceeds of sale and a check for $9488.56 to apply on her bid. The Cook note and trust deed were then satisfied by the payment of $4782 by the master, and there was paid by the master on account of the Dahlgren note and mortgage the sum of $2379.76. The costs amounted to $1495.11. After paying these items the remainder in the master's hands amounted to $3331.69, which was that portion of the proceeds of the sale of the real estate the distribution of which was subject to change by the judgment of this court in the suit instituted here by Karl Gustav Magnuson.

On February 17, 1902, while the writ of error was still pending in this court, Ellen Marie Magnuson delivered to Gustav Mathison, the appellant, a written instrument which purported to assign and transfer to said Mathison all the interest of the assignor in and to the $3331.69 in the hands of the master, to be applied on an obligation of hers held by Mathison.

After the decision of this court in *Magnuson* v. *Magnuson, supra*, the master paid out of said $3331.69 to Thea Sevrina Magnuson and to Helga Magnuson each $475.96, and to Helga J. Olsen, Thor A. Olsen, Ellen S. Olsen, Magnus Olsen and Hilda A. Olsen each the sum of $95.19, such payments being in accordance with the decree of distribution theretofore entered. The seven persons last named, how-

ever, claimed that they were entitled to additional sums, aggregating $597.75, out of the proceeds of sale in the hands of the master under a verbal agreement with the solicitors for Ellen Marie Magnuson, entered into before the decree of partition was rendered, to the effect that their interests in the real estate, aggregating one-eighth thereof, should not be made to bear any part of the payment of the Cook note and trust deed. Dahlgren also claimed that he was entitled to the further sum of $960 of the proceeds of sale under the same agreement with the solicitors for Ellen Marie Magnuson. Mathison was at the same time claiming the entire balance of $1903.82 in the hands of the master by virtue of the assignment from Ellen Marie Magnuson to him.

Upon the refusal of the master to pay the sum demanded by them, Thea Sevrina Magnuson, Helga Magnuson, Ellen S. Olsen, Helga Jenny Olsen, Thor A. Olsen, Magnus Olsen and Mabel Olsen, on November 3, 1902, filed a petition, and afterwards filed an amended petition, in the circuit court of Cook county seeking to establish an equitable assignment of $597.75 of the funds held by the master from Ellen Marie Magnuson to the petitioners prior to the assignment to Mathison, and praying for an order directing the master to pay to them that sum. Ellen Marie Magnuson and Gustav Mathison were made respondents to this petition. On December 9, 1902, August Dahlgren also filed a petition, and later filed an amended petition, against the same respondents, in said circuit court seeking the same relief, except that he claimed $960 of the balance in the hands of the master. Those petitioners are appellees in this court, and for convenience will hereinafter be referred to as the "petitioners." In this cause as entitled here, Ellen Marie Magnuson also is made an appellee. The aggregate of the petitioners' claims against the fund assigned to Mathison is $1557.75. Separate answers were filed to the amended petitions by the respondents denying any equitable assignment to the petitioners from Ellen Marie Magnuson, and averring that the entire amount

remaining in the hands of the master from the sale in parti-
tion belongs to Mathison by virtue of the assignment to him.

The petitions were heard by the circuit court as one
cause under an agreement that the evidence taken should
apply to the issues made on both amended petitions, and one
decree was rendered disposing of the entire controversy,
finding that it appeared from the master's report filed on
April 26, 1901, (being the report which formed the basis for
the decree of partition entered on that date,) that the note
of Peter O. Magnuson for $4500 had been, prior to the time
of the filing of the bill, filed and allowed as a claim against
the estate of Peter Oluf Magnuson; "that said Magnuson
left sufficient personal estate to pay all of his debts, includ-
ing the claim of said Cook; that the personal estate of said
deceased, as between the executors and the heirs and devi-
sees, was primarily liable for the payment of said note; that
while said cause was pending an oral agreement was made
between the counsel of the several intervening petitioners
and the counsel for said complainant that said intervening
petitioners, in order to expedite and shorten the proceedings
before the master, should make no proof with reference to
the sufficiency of the personal estate to pay debts, and in
consideration thereof the said intervening petitioners should
receive out of the proceeds of said sale their respective por-
tions thereof without any deduction or diminution on ac-
count of the said encumbrance, which encumbrance it was
agreed should be paid or removed wholly by said complainant
or out of her share in said fund; that said agreement was
made by complainant's counsel with her full knowledge and
consent, and that said agreement was equitable and just and
that her counsel had authority to make the same; * * *
that Ellen Marie Magnuson, with the intent to repudiate and
nullify said agreement and to defraud the intervening peti-
tioners, undertook to assign the funds in said master's
possession, including the amount equitably due to the said
intervening petitioners, to said Gustav Mathison, and filed

with the master an instrument purporting to assign the same; that said assignment was made to and received by said Mathison with full knowledge on the part of him and his counsel of the agreement heretofore referred to, and that said assignment was and is subject to the rights of the intervening petitioners." The decree then finds "that the amount paid by the master to satisfy the claim of said Cook ought to be charged to and paid out of the share of said complainant in the proceeds of sale and that the share of said intervening petitioners should be exonerated therefrom;" that the funds in -dispute between the parties hereto are in the possession of the court; that William R. Anderson, as administrator of the estate of August Dahlgren, who has died since the filing of the petition by him, is entitled to $960 and the other petitioners are entitled to the sum of $597.75 from the fund in the hands of the master, and that Gustav Mathison is entitled to the remainder of said fund. The master is ordered to pay the fund remaining from the partition sale to the parties according to their rights as fixed by this decree.

From the decree last above mentioned Gustav Mathison appealed to the Appellate Court for the First District, where the decree was affirmed. He has prosecuted a further appeal to this court, and contends that the decree is erroneous in directing the master to pay to the petitioners any portion of the funds in the hands of the master which are covered by the assignment made to appellant.

Ellen Marie Magnuson and Karl Gustav Magnuson were the only distributees of the personal estate of Peter Oluf Magnuson, deceased, the former being entitled to five-sixths thereof and the latter to the remaining one-sixth. The note held by Cook, which, with interest, amounted to $4782, was filed and allowed as a claim against the personal estate. The personal assets when the partition suit was instituted consisted of about $2800 in cash and two notes for $5000 each, one signed by Ellen Marie Magnuson and "endorsed" by

Karl Gustav Magnuson, and the other signed by Karl Gustav Magnuson and "endorsed" by Ellen Marie Magnuson. Karl Gustav Magnuson was insolvent. Ellen Marie Magnuson had no property, or practically none, except her interest in the estate of Peter Oluf Magnuson. The executor could not pay the Cook claim out of the personal estate without enforcing payment of the notes against Ellen Marie Magnuson. After the bill for partition had been filed by Ellen Marie Magnuson setting up the lien of the trust deed securing the Cook note, and before the master had reported the evidence, the solicitor for the other tenants in common except Karl Gustav Magnuson, the latter having mortgaged his interest in the real estate for more than it was worth, had a conversation with the solicitors for Ellen Marie Magnuson, in which the former insisted that the Cook claim should be paid out of the personal estate before partition of the real estate could be had. The reason for this contention on his part is obvious, as his clients were not entitled to participate in the distribution of the personal estate. August Dahlgren, as mortgagee of the interest of Karl Gustav Magnuson, made the same contention. The solicitors for these various parties, on behalf of their clients, thereupon entered into an oral agreement whereby it was sought to accomplish substantially the same result, so far as the interests of the parties were concerned, as though the Cook claim had been paid out of the personal estate. The decree of partition and the decree of distribution, however, were entered without regard to the agreement and precisely as though it had not been made. The agreement was to the effect that the payment of the Cook note and trust deed should be borne entirely by Ellen Marie Magnuson and that none of the other parties should be compelled to contribute towards such payment. That such was the intention of the parties is not controverted by counsel for appellant in this case, but it is contended that the agreement was not such as would authorize the circuit court, upon petition filed for that purpose, to order the master in

chancery to pay any portion of the fund which, under the decree of distribution, belonged to Ellen Marie Magnuson, to the other parties to the agreement.

Hess, the solicitor in the partition suit for Thea Sevrina Magnuson and her co-petitioners, testifies that the agreement made with him by the solicitors for Ellen Marie Magnuson was, that if he would make no contention in regard to the payment of the Cook claim out of the personal estate and would introduce no testimony on that subject, "then, when the distribution came, Mrs. Magnuson would pay my clients and permit them to receive from the master the same amount that they would have received if the proof that I proposed to make had been made." Little, one of the solicitors for Ellen Marie Magnuson, testifies that he and Miller, his associate, on behalf of their client, agreed with Hess that "we would take care that Mr. Hess' clients should not be compelled to pay out of their distributive share of the real estate any part of the Cook mortgage."

Anderson, the solicitor for Dahlgren, testifies that Miller, at the hearing before the master, told him (Anderson) that he had made an arrangement with Hess that Hess' clients "should have their *pro rata* share out of the Cook mortgage and that he would make the same arrangement with me for my client," and that after the decree of partition had been entered and when Anderson was threatening to file a bill to compel Cook to enforce his claim against the personal estate, Miller told him that he (Miller) would see that Anderson got his money as promised him. In reference to the agreement with Anderson, Little testifies that both he and Miller, at the hearing before the master, told Anderson that they agreed with him that the personal estate should pay the Cook encumbrance, and "that we would carry out the same arrangement with him that we had agreed to carry out with Mr. Hess, namely, that the share of his client, or rather the share of Karl Gustav Magnuson, upon which his client had a lien, should not bear any part of the D. S. Cook mortgage."

The above is, in substance, all the testimony in the record in reference to the agreement between the parties relative to the payment of the Cook note.

The amended petition filed by Thea Sevrina Magnuson and her co-petitioners alleged that Ellen Marie Magnuson assigned and transferred to petitioners the sum of $597.75 out of her share of the proceeds of sale, that being the amount of their portion of such proceeds that was applied on the Cook debt. The amended petition of August Dahl-gren makes the same allegations as to an assignment to him, except the amount claimed to have been assigned is $960, that being the portion of the interest of Karl Gustav Magnuson which was applied on the said debt. The evidence shows that the master was notified of the agreement between the parties, but there is no testimony whatever showing that he was directed to pay to the parties who filed these petitions any portion of the proceeds of sale derived from a sale of the interest in the real estate which the decree of partition found was owned by Ellen Marie Magnuson, or that anything was said to him except to repeat the agreement which had been entered into between the solicitors for the respective parties.

From the documentary evidence, from the decrees entered in the partition suit and from the general conduct of the parties it would seem that the solicitors for the respective parties intended by their agreement that distribution should be made according to their rights and interests as found by the decree of partition, and that upon the receipt of the share which, under the decrees, would be paid by the master to Ellen Marie Magnuson, she, or her solicitors acting for her, would pay to the other parties sums sufficient to make up the amounts which they would have received if no deduction had been made therefrom by the master on account of the payment of the Cook note; that the solicitors for petitioners relied upon the solicitors for Ellen Marie Magnuson to carry out this arrangement, believing that as Ellen Marie Magnu-

son was personally unable to attend to the transaction her share in the proceeds of sale would come into the hands of her solicitors, who would pay to the solicitors for the petitioners the amounts promised them. While the money was still in the hands of the master, however, Ellen Marie Magnuson discharged the solicitors with whom the agreement had been made and employed another, and assigned all her right, title and interest in the proceeds of sale remaining undistributed to Mathison.

That the intention of the solicitors, acting for their clients, was as last above stated, is well nigh conclusively established by the fact that no attempt was made by petitioners, or those representing them, to have the court order distribution according to the agreement, but the master was, by decree entered after the agreement was made, ordered to distribute the money realized from the sale to the parties entitled thereto according to their interests as they existed independently of the agreement, and was by the decree of distribution directed to distribute the proceeds of sale, after paying the costs, between the parties in the proportion to which each was entitled according to the decree of partition.

Furthermore, after the decree of distribution had been entered the parties entered into a written agreement that the master should, out of the proceeds of sale, pay the costs of suit and the Cook note, pay one-half of the balance to Ellen Marie Magnuson on her distributive share, pay a certain sum on the Dahlgren note, and if Karl Gustav Magnuson did not prosecute a writ of error to obtain a review of the decree of partition within a certain time, to distribute the balance in accordance with the decree of distribution. The action of the parties in entering into this last agreement would seem to make it certain that they intended that their respective claims should be adjusted among themselves after the master had distributed to them the amounts to which they were entitled under the decree of distribution.

It is apparent that the evidence in this record wholly fails to establish the allegations of the amended petitions setting up that Ellen Marie Magnuson assigned and transferred to the petitioners, out of her share of the proceeds of sale, the respective sums claimed by each of them. Pomeroy's Eq. Jur. sec. 1280; *Cameron* v. *Boeger,* 200 Ill. 84; *Wyman* v. *Snyder,* 112 id. 99; *Trist* v. *Child,* 21 Wall. 441.

The agreement, as testified to by the witnesses in this case, might be considered either as a promise on the part of Ellen Marie Magnuson to pay to the petitioners, out of her share in the proceeds of sale, the amounts now claimed by them, or as an agreement between the parties that the master should distribute the proceeds of sale between the parties entitled thereto according to their interests as fixed by their agreement, and not according to the decrees of the court to be thereafter entered in the cause. Neither of these theories would entitle petitioners to have in this suit the relief they seek by this proceeding. *Cameron* v. *Boeger, supra.*

Another contention of petitioners in support of the decree of the circuit court is, that the Cook note was paid by the executor of the will of Peter Oluf Magnuson prior to the filing of the petitions, and that the lien of the trust deed was thereby removed from the respective shares of the tenants in common. This argument is based upon the following state of facts:

Charles G. Little, one of the solicitors who, on behalf of Ellen Marie Magnuson, made the agreements hereinbefore referred to, was also acting as the attorney for Simonson, the executor of the will of Peter Oluf Magnuson, in settling his estate in the probate court. After Ellen Marie Magnuson had purchased the property at the partition sale, Simonson, as executor, drew a check for $2500 payable to the master in chancery who made the sale, and delivered this check to Little, who turned it over to the master to apply on the bid of Ellen Marie Magnuson. Thereafter Little arranged for a loan to Ellen Marie Magnuson from the Chi-

cago Title and Trust Company. He received a check from the trust company for $9488.56, which he also turned over to the master to apply on the bid, at the same time giving to the master a receipt, signed by Ellen Marie Magnuson, for $5711.44. Thereafter, on November 26, 1901, Simonson filed his account as executor in the probate court, in which appears an item under date of August 19, 1901, as follows: "To George Mills Rogers, to be applied on D. S. Cook claim, $2500." At the same time Simonson presented to the probate court a document denominated a final report, in which it is recited that in pursuance of an agreement, to which the executor was a party, that the Cook claim should be paid by the executor out of the personal estate, said executor paid to the master in chancery, on behalf of the complainant, the sum of $2500; that Ellen Marie Magnuson made a loan of $10,000 and out of the proceeds of the loan paid to the master $9488.56; that out of the sum of $11,988.56 thus paid the Cook indebtedness was discharged by the payment of $4782 to Cook, and that thereupon Simonson endorsed upon the note of Ellen Marie Magnuson, which he, as executor, held against her, the sum of $2282 as a part payment thereof.

Petitioners contend that this evidence shows that "the executor paid off the entire mortgage—$2500 by cash, $2282 by the endorsement on the note," and that "after he had done so there was no Cook mortgage," and that the proceeds of sale should then have been distributed as though the trust deed had never existed.

We think this reasoning unsound. As before mentioned, Little was acting for the executor in settling the estate and for Ellen Marie Magnuson in the partition proceedings. He had entered into an agreement with the solicitors for petitioners that the payment of the Cook note should be borne entirely by Ellen Marie Magnuson. He prepared the account and report of the executor which were presented to the probate court, and was perhaps of the opinion that the trans-

action was correctly set forth by the report. If so, he was mistaken. The payment of the $2500 was made to the master to apply on the bid of $17,700 made by Ellen Marie Magnuson at the partition sale, and was not a payment by the executor upon the debt due Cook. It was paid to and received by the master to apply on the bid and not to apply on the Cook note, except as it was received by him as a part of the proceeds of the sale from which the Cook note was, by the decree, directed to be satisfied. The same is also true of the $9488.56. The only justification for the act of the executor in paying the $2500 to the master was that Ellen Marie Magnuson would be entitled to that sum in the distribution of the personal estate, and in order to conform to the facts it should have been reported as a payment to her on account of her distributive share in that estate. The credit endorsed on her note did not constitute a payment by the executor on the Cook claim.

In our judgment the petitioners were not entitled, under the showing made in this case, to an order directing the master, out of the proceeds of sale remaining in his hands, to pay the amounts claimed by them in their petitions, but the fund now held by the master belongs to appellant, Gustav Mathison, by virtue of his assignment from Ellen Marie Magnuson.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the original and amended petitions filed therein by the petitioners. The costs of this court will be adjudged against the appellees other than Ellen Marie Magnuson.

*Reversed and remanded, with directions.*